UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| DIANA STANDIFUR, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 7: 07-25-DCR |
| | ) |
| V. | ) |
| | ) |
| MICHAEL J. ASTRUE, | )   **MEMORANDUM OPINION** |
| Commissioner of Social Security, | )   **AND ORDER** |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This action represents the third attempt by Plaintiff Diana Standifur ("Standifur") to obtain Social Security benefits. The matter is currently pending for consideration of cross-motions for summary judgment filed by Standifur and Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 9, 10] According to Standifur, the Administrative Law Judge ("ALJ") erred by failing to identify and consider certain limitations which were recognized by a prior ALJ. However, the Commissioner contends that the slight differences in Standifur's limitations recognized by ALJs are of no significance.

Because the Court is unable to conclude from the administrative record that Standifur would be able to perform jobs identified by the VE if the additional limitations recognized by prior ALJ were adopted by ALJ Andrus, the Court must remand this matter to the Commissioner for further proceedings.

**I.     Procedural History**

Standifur initially filed an application for benefits on June 1, 2000.  That request was denied following an administrative hearing before ALJ Andrew J. Chwalibog.  Standifur filed suit following the ALJ's adverse determination and the matter was subsequently remanded to the Commissioner for further proceedings.  However, while the matter was pending on remand, Standifur filed another application for benefits (December 13, 2001).  Standifur's December 13, 2001, application was then consolidated with the matter that had been  remanded.

On September 26, 2003, ALJ Chwalibog issued a Decision, concluding that Standifur was not entitled to a period of disability, Disability Insurance Benefits ("DIB"), or Supplemental Security Income ("SSI") under Sections 216(i) and 223 of the Social Security Act.  In reaching this conclusion, ALJ Chwalibog found that Standifur had several limitations, but that the limitations found to exist as of that date did not prevent her from performing a significant range of light work that existed in the national economy.

Specifically, ALJ Chwalibog found that Standifur suffered from obesity and a back impairment (including back and leg pain).[1]  With respect to Standifur's back impairment, the ALJ found that, "[a]s a whole, the record reflects that the claimant's back condition has not improved over time, yet she retains normal neurologic status, normal gait, and normal motor strength " . . . . [Furthermore, the] medical record as a whole supports that her back condition

---

[1]     ALJ Chwalibog rejected Standifur's claim that she was suffering from a severe mental impairment. Instead, he concluded that "the claimant appears primarily limited due to her alleged back pain." [*See* Administrative Transcript, ("Tr.") at p. 49.]

is relatively stable, managed with medication." [Tr. at 49, 52] However, even in light of these impairments, he concluded that Standifur had the residual functional capacity ("RFC") to:

> lift/carry 10 pounds frequently/20 pounds occasionally; avoid concentrated exposure to cold, vibration, unprotected heights and moving machinery; occasionally climb, stoop, kneel, crouch and crawl; no overhead work; and no climbing of ladders/scaffolds.

[Tr. at p. 52]

Shortly before ALJ Chwalibog issued his Decision on September 26, 2003, Standifur filed a third application for SSI payments (September 20, 2003). And approximately one month later, she filed another application for DIB (October 17, 2003). Those claims were denied initially and upon reconsideration.

On August 30, 2005, an administrative hearing concerning the third application was held before ALJ Charlie Paul Andrus. According to ALJ Andrus, "[c]ontrary to the prior findings of Judge Chwalibog, given new and material evidence including more recent testimony, the undersigned further accepts that the claimant has 'severe' respiratory and mental impairments." [Tr. at p. 28.] ALJ Andrus also determined that the claimant continued to be limited by back problems and associated pain. However, he found that, based on the new evidence submitted, Standifur's back condition had stabilized and her mental and other impairments were not of a severity to entitle her to disability benefits. [Tr. at 31-36]

In light of the medical evidence presented, ALJ Andrus concluded that Standifur had the following RFC:

> light exertional activity which involves lifting and/or carrying of no more than twenty (20) pounds maximum occasionally and ten (10) pounds maximum frequently with a sit/stand option at one to two (1-2) hour intervals; no more than

>occasional climbing, stooping, kneeling, and crawling; no work at heights or around dangerous equipment; and no work in excessive dust/fumes. Mentally, she is limited to simple jobs without high stress levels.

[Tr. at 35]

ALJ Andrus' Decision recognized that the prior administrative determination was binding and that he was limited to deciding whether Standifur was disabled during the period September 27, 2003 through the date of his ruling. [Tr. at 26] However, he did not explain why he did not recognize all of the functional limitations previously recognized by ALJ Chwalibog.

After exhausting review before the Commissioner, Standifur filed the present action, challenging the decision of ALJ Andrus.

## II.  Relevant Facts

Unfortunately, the administrative record does not contain the transcript of the January 27, 2003, administrative hearing. However, the Decision of ALJ Chwalibog appears at pages 48 to 55 of the administrative record. Based on the testimony and evidence presented to him, ALJ Chwalibog determined that Standifur had limitations which prevented her from lifting or carrying more than ten pounds frequently or 20 pounds occasionally. Further, he concluded that Standifur should avoid concentrated exposure to cold.[2] He also found that Standifur should: avoid unprotected heights and moving machinery; be limited to occasionally climbing, stooping, kneeling, crouching and crawling; and not climb ladders or scaffolds. [Tr. at 54] In making

---

[2]   This limitation appears to be based upon claims that her back symptoms and pain were aggravated by changes in weather and cold temperature. See, for example, claims made in conjunction with a subsequent March 4, 2004, report from Dr. Cary Twyman; Tr. at 204. However, because neither the administrative transcript nor materials related to the January 27, 2003 hearing before ALJ Chwalibog have been submitted, the Court can only speculate concerning the basis for the conclusion and resulting limitation.

these determinations, ALJ Chwalibog concluded that Standifur experienced back pain, but that her back condition was relatively stable. He also recognized that she suffered some limitations due to obesity. Further, the ALJ found that Standifur's subjective complaints were not as severe as alleged. He also concluded that she was not suffering from a disabling mental or breathing impairment. [Tr. at 49-52]

After considering the claimant's age, high school education, past work experience as a billing clerk, and functional limitations, the VE identified a number of jobs that Standifur could perform at the light and sedentary levels. These jobs included clerical worker (350,000 jobs in the national economy and 16,000 jobs in the region); counter clerk (150,000 in the national economy and 7,000 jobs in the region); receptionist (180,000 jobs in the national economy and 9,000 jobs in the region); and information clerk (54,000 jobs in the national economy and 2,500 jobs in the region). [Tr. at 53-54]

At the time of the most recent administrative hearing (August 30, 2005), Standifur was 51 years-old. Her educational level and past work experience had not changed since the prior hearing. [Tr. at p. 26] During this hearing, ALJ Andrus received testimony from Standifur and VE Leah Salyers. [Tr. at 309-329]

With respect to her claimed limitations, Standifur testified that she had recently gained approximately 40 pounds which she attributed to inactivity. [Tr. at 313] She stated that, while she is able to drive an automobile, her driving is limited by pain. According to Standifur, she has experienced back pain since an accident occurring in approximately 1995. She states that, while she continued to work following the accident, the pain eventually became disabling in May

of 2000. However, Standifur has declined surgical intervention to relieve the pain for "personal" reasons. [Tr. at 313-15] In response to questions from the ALJ, Standifur testified that she was able to lift 10 pounds and was able to sit for approximately 15 minutes. Further, Standifur indicated that she is able to sleep and attend to personal grooming without assistance. [Tr. at 318]

In response to questions from her attorney, Standifur provided further information concerning the effect of her impairments upon her prior work as well as her present daily activities. In relevant part, Standifur indicated that when she was employed in a doctor's office, she was required to lift boxes of computer paper weighing as much as 30 pounds. Further, she was required to "do a lot of bending and stooping." [Tr. at 318-20] However, she testified that she could no longer perform these functions. And with respect to daily activities, Standifur indicated that she was only able to do light cooking and limited cleaning. [Tr. at 320]

Following Standifur's initial testimony, the ALJ presented a number of hypothetical questions to VE Leah Salyers. After determining that Standifur's past work should be classified as medium in terms of the exertion level required, the ALJ ask the VE to make the following assumptions:

> Q. Let's assume that we have an individual who is limited to light work, that is lifting no more than 20 pounds occasionally, 10 pounds frequently. And let's assume that the individual is limited to simple jobs without high stress levels. Let's also assume the individual needs to have the option to sit or stand at one to two-hour intervals. Let's further eliminate work at heights or around dangerous equipment. Assume the individual can only occasionally climb, stoop, kneel, or crawl and eliminate work in excessive amounts of dust or fumes. Could such an individual return to the claimant's past work?
>
> A. No, sir.

[Tr. at 324]

However, even though the VE determined that the hypothetical claimant's skills would not be transferrable, she was able to identify jobs in the national and regional economies that such a person with Standifur's age, work history and education could perform. According to VE Salyers, such a person could perform 60% of light and 50% of sedentary jobs. This included word as a survey interview worker (6,200[3] in the national economy and 9,000 in the regional economy); unskilled clerical worker (100,000 in the national economy and 5,000 jobs in the regional economy); non-emergency dispatcher (85,000 jobs in the national economy and 3,800 jobs in the regional economy); and clerical worker (85,000 jobs in the national economy and 4,200 jobs in the regional economy). [Tr. at 325-26]

Following this answer by the VE, the ALJ then asked the VE to assume the hypothetical claimant had additional limitations.

> Q. All right. Now, I want you to assume that I find the following to be the functional capacity. I want you to assume that the individual can stand for one hour, sit for one hour and walk for one hour. Can occasionally lift up to 10 pounds, cannot use the hands for simple grasping, pushing or pulling or fine manipulation, nor can they use the feet for repetitive movement. Assume the individual cannot bend, squat, crawl, climb or reach above shoulder level, cannot work at unprotected heights, around moving machinery, exposure to changes in temperature and humidity, driving automobile equipment and working in dust or fumes. In your opinion, would there be further restrictions imposed?

[Tr. at 326] With these limitations, the VE testified that any type of sustained gainful employment would be precluded. [Tr. at 326] She was not ask nor did she attempt to explain which additional restrictions – either singly or in combination – caused her to reach this conclusion.

---

[3] This appears to be a typographical error.

### III.     Legal Standard

A claimant's social security disability determination is made by an ALJ in accordance with a five-step analysis. If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's RFC and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work

available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002), (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004); *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence. Credibility determinations are particularly within the province of the ALJ. *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987).

**IV.     Discussion**

Standifur raises one issue in this action. She contends that ALJ Andrus erred because he assessed a RFC different from the RFC found by ALJ Chwalibog following the January 27, 2003, administrative hearing. Relying on the Sixth Circuit's opinion in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), Standifur asserts that ALJ Andrus was bound by the decision of the prior ALJ and was precluded from finding a different RFC from that found by the ALJ at her earlier hearing.

In *Drummond*, the claimant's initial application for Supplemental Security Income was denied by an ALJ, finding that the claimant retained the RFC to perform "sedentary" work. *Id.* at 838. The claimant filed a subsequent application for Supplemental Security Income two years later. Another hearing was held before an ALJ. This time the ALJ concluded that the claimant had the RFC to perform "medium" work. *Id.* at 839. The Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. The result of this decision for the claimant in *Drummond* was the awarding of benefits.[4]

On December 1, 2005, ALJ Andrus concluded that Standifur was not disabled. Specifically, he found that the Plaintiff had the following residual functional capacity:

> light exertional activity which involves lifting and/or carrying of no more than twenty (20) pounds maximum occasionally and ten (10) pounds maximum frequently with a sit/stand option at one to two (1-2) hour intervals; no more than occasional climbing, stooping, kneeling, and crawling; no work at heights or around dangerous equipment; and no work in excessive dust/fumes. Mentally, she is limited to simple jobs without high stress levels.

[Tr., p. 35]

ALJ Andrus found that, based on new and material evidence and testimony, he was not bound by the prior findings of Chwalibog concerning Standifur's respiratory and mental impairments. Thus, he found that her ability to perform work in the national economy was more restricted that previously recognized. He also recognized that Standifur continued to suffer from

---

[4] Benefits were due because the claimant's age status had changed from a "younger person" to a "person approaching advanced age," during the time between the two applications for benefits. The result of a "sedentary" RFC finding in combination with the new age status meant the claimant was entitled to benefits. *Id.* at 839

back problems and related pain and devoted a portion of his Decision in analyzing the evidence related to these conditions.

> In her filings, the claimant has reported that she ceased all work activity in May 2000 as residual pain from "ruptured discs" became so severe that she was unable to continue working (Exhibit B2E). According to further reports, she has a long-standing history of chronic back/leg/knee pain stemming from a remote work-related lifting injury in 1995 (Exhibit B4F). Although the undersigned is not persuaded by the weight of the record that the claimant's condition is debilitating as alleged, consistent with the prior findings of Judge Chwalibog, the claimant if found to have had "severe" musculoskeletal impairment at all times relevant to this decision given well-documented evidence of severe back pathology. As documented by the record and as noted by Dr. Cary Twyman, a treating neurologist, the claimant's MRI studies have worsened over the years with changes at the L5-S1 level with muscle spasms and herniated nucleous pulppsus at the L5-S1 level as well. . . . While the evidence as a whole supports that the claimant's back condition is relatively stable and is reasonably managed with medication, by all accounts, she continues to experience significant residual limitations as a result thereof. The record also reflects that her back condition may be further compounded by "severe" obesity as weight loss has long been recommended.

[Tr. at 27-28]

Thus, while ALJ Andrus found reason to conclude that Standifur's RFC was further limited by conditions not previously recognized as significant, he did not offer any reason for *excluding* several limitations (*i.e.*, avoid concentrated exposure to cold and no overhead work and no climbing of ladders or scaffolds) which appear to have resulted from her continuing back problems.

The Court has also considered whether the limitations excluded from ALJ Andrus' Decision are relevant to the jobs identified by VE Salyers. In other words, would the additional, excluded limitations be items that would be required of survey interviewers, clerical workers or non-emergency dispatchers? While the answer to this question appears obvious, this is a

question that must be presented to a vocational expert. In short, based on the current state of the administrative record, the Court cannot make this determination. Therefore, the Court will remand the action back to the Commissioner so that proper findings can be made based on all limitations applicable to Standifur.

### V.     Conclusion

ALJ Andrus did not explain why he did not include all limitations recognized by ALJ Chwalibog in his hypothetical question to the vocation expert or in his findings. This failure violates the holding of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). Based on the administrative record, the Court cannot conclude that this error is harmless. Accordingly, it is hereby

**ORDERED** as follows:

1.     Plaintiff Diana Standifur's Motion for Summary Judgment [Record No. 9] is **GRANTED**, to the extent that she seeks remand of the Commissioner's decision for further administrative proceedings. In all other respects, her motion is **DENIED**.

2.     Defendant Commissioner's Motion for Summary Judgment [Record No. 10] is **DENIED**.

3.     This matter is **REMANDED** to the Commissioner of Social Security for further administrative proceedings consistent with this Memorandum Opinion and Order.

This 16th day of July, 2007.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge